# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| **KIM STRAUB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-00909-NCC |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner that Kim Straub ("Plaintiff") was no longer entitled for Supplemental Security Income ("SSI") under XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 16) and Defendant has filed a brief in support of the Answer (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

On August 10, 1993, Plaintiff was found disabled beginning May 1, 1993 (Tr. 94). On May 17, 2005, the Commissioner determined that Plaintiff remained disabled (Tr. 94-97). A continuing disability review later determined that Plaintiff's condition had improved and that she was no longer disabled as of March 30, 2017 (Tr. 114-16). Plaintiff appealed the termination of benefits, and the termination was affirmed upon reconsideration (Tr. 104-115). On August 31, 2018, following a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff's disability ended on March 30, 2017, due to medical improvement. (Tr. 28-39). On February 5, 2019, the

Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that at the time of the comparison point decision ("CPD") of May 17, 2005, Plaintiff had the medically determinable impairment of seizure disorder resulting in the residual functional capacity ("RFC") to preform most work-related activities except that she had seizures that occur without warning at least once a week that required her to lie down and rest (Tr. 29). The ALJ found that Plaintiff did not develop any additional severe impairments after the CPD through March 30, 2017 and, thus, Plaintiff's current severe impairment remained seizure disorder (Tr. 30). The ALJ further found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that medical improvement occurred as of March 30, 2017 (Tr. 30-31). The ALJ determined, based on the impairment present as of March 30, 2017, that Plaintiff had the RFC to perform at all exertional levels as defined in 20 C.F.R. § 416.967 "except frequently climbing ramps and stairs but never ladders, ropes and scaffolds; frequently balancing, stooping, kneeling, crouching and crawling; with no exposure to unprotected heights or hazardous machinery" (Tr. 31). The ALJ also determined that Plaintiff did not have any past relevant work, but that there were a significant number of jobs in the national economy that she could perform as of March 30, 2017 (Tr. 37). Therefore, the ALJ concluded that Plaintiff's disability ended as of that date (Tr. 38-39).

## III. LEGAL STANDARD

Once an individual becomes entitled to disability benefits, her continued entitlement to benefits must be reviewed periodically. 20 C.F.R. § 416.994(a). If there has been a medical

improvement related to the claimant's ability to work, and the claimant is able to engage in substantial gainful activity, then a finding of not disabled will be appropriate. 20 C.F.R. § 416.994(b); *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991). The claimant has a "continuing burden" to demonstrate that she is disabled, and no inference is to be drawn from the fact that she has previously been granted benefits. *Id.* If the Commissioner seeks to end disability benefits because of an improvement in the claimant's medical condition, the Commissioner must demonstrate that "the conditions which previously rendered the claimant disabled have ameliorated, and the improvement in the physical condition is related to claimant's ability to work." *Id.* (citing 20 C.F.R. 404.1594(b)(2)-(5)).

"Medical improvement" is any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. § 416.994(b)(1). The "medical improvement" standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits. *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008). Once a medical improvement has been established, the Commissioner must determine the claimant's RFC and whether, with this RFC, she can perform her past work. 20 C.F.R. § 416.994(b)(5)(vii). If she can, the Commissioner will find the claimant's disability to have ended. *Id.* If the claimant cannot engage in her past relevant work, the Commissioner must consider whether the claimant can perform other jobs with her current RFC. 20 C.F.R. § 416.994(b)(5)(viii). If she cannot, the Commissioner will find claimant's disability to continue. *Id.*

The Court's review of a termination of disability benefits pursuant to the continuing disability review process is limited to determining whether substantial evidence on the record as

a whole supports the ALJ's decision.  *Dixon v. Barnhart*, 324 F.3d 997, 1000 (8th Cir. 2003).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).  The Court does not re-weigh the evidence or review the record de novo.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).  Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence.  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues.  First, Plaintiff argues that the ALJ failed to fairly and fully develop the record as to Plaintiff's mental health impairments (Doc. 16 at 6-8).  Second, Plaintiff asserts that the ALJ failed to obtain medical records from several emergency room visits (*Id.* at 8-9).  For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Fairly and Fully Develop the Record**

First, Plaintiff argues that the ALJ failed to fairly and fully develop the record as to Plaintiff's mental health impairments (Doc. 16 at 6-8).  Specifically, Plaintiff asserts that the ALJ failed to appropriately find Plaintiff's mental health impairments of borderline intellectual functioning and memory problems to be severe impairments (*Id.* at 6).  Instead, the ALJ found the results from a 2003 exam "may not be valid" but, as asserted by Plaintiff, the ALJ failed to further develop the record regarding this matter (*Id.*).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. 20 C.F.R. § 416.945(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). "This duty is enhanced when the claimant is not represented by counsel." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994). However, the "duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. While a claimant has the burden of showing a severe impairment that severely limits her physical or

5

mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or her] ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 416.922(b).

The Court finds that the ALJ's determination that Plaintiff's mental health impairments are not severe is supported by substantial evidence. Although Plaintiff alleged continuing disability based on seizures and "slow cognition" (Tr. 32 103, 212, 227), the record does not establish that Plaintiff's mental health impairments constitute "more than a minimal impact on her ability to do work." *Caviness*, 250 F.3d at 605. The ALJ determined that Plaintiff did not develop any additional severe impairments after the CPD through March 30, 2017 (Tr. 30). In doing so, the ALJ did not address Plaintiff's alleged impairment of borderline intellectual functioning or any other mental health impairment (*See id.*). The ALJ, nevertheless, addressed Plaintiff's borderline intellectual functioning and memory problems elsewhere in the decision. In doing so, the ALJ acknowledged that Plaintiff testified that she has difficulty remembering generally, understanding what is said to her, following instructions, completing tasks, taking medications without reminders, and shopping (Tr. 30, 54-55, 60-61). Indeed, in her function report, Plaintiff indicated that she has issues with her memory; she forgets what she is supposed to be doing (Tr. 247). Plaintiff further reported that one of her children reminds her to take her medications and that she forgets spoken instructions (Tr. 249, 252). However, the ALJ reviewed the medical evidence of record and found the record replete with largely normal psychiatric results (Tr. 31, 34-35). Plaintiff primarily received her medical treatment from her primary care physician, Dr. Lavert Morrow, M.D. ("Dr. Morrow"). Dr. Morrow consistently reported normal

6

psychiatric findings including "recent memory normal and remote memory normal" (Tr. 368, 370, 515, 517, 519, 521).  Dr. Jamila Morrow, M.D., a fellow physician at Dr. Morrow's office, similarly found "No psychomotor mood, affect, speech or thought impairments" (Tr. 375, 378, 381).  Additionally, Emergency Room notes from St. Mary's St. Louis dated August 17, 2016, indicate, of note, "[c]ognition and memory are normal" (Tr. 421).

      The ALJ also properly evaluated Plaintiff's subjective complaints as they related to her mental health impairments.[1]  *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)).  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

---

[1] Social Security Ruling ("SSR") 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

7

First, as noted by the ALJ, Plaintiff did not receive treatment or any further exam for her mental health impairments. As noted by the ALJ, Plaintiff "was treated for an adjustment disorder in 2010 secondary to divorce, however, she took herself off medication and reported no further complaints through the end of 2017" (Tr. 31). Specifically, at an August 20, 2010 visit, Plaintiff presented with depressed mood and was diagnosed with adjustment order with depressed mood (Tr. 33, 398-99). Plaintiff was prescribed Citalopram ("Celexa") (Tr. 33, 399). However, at her September 13, 2010 visit, Plaintiff reported that she had stopped taking the medication and she was not prescribed a different medication (Tr. 33, 392-93). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Further, upon a complete and thorough review of the record, the Court cannot find any recent evaluation or treatment for borderline intellectual functioning or memory issues. *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . . limited treatment of symptoms, [and] failure to diligently seek medical care"); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (finding that conservative treatment reduced the claimant's credibility).

Second, the ALJ noted significant noncompliance with physician's treatment recommendations. Specifically, Plaintiff failed to follow up with medical treatment even when directed to do so (Tr. 33-36, 371, 402, 409-10, 413, 441, 515-16), did not take her seizure medication (Tr. 33-36, 351, 386, 404), and never quit smoking despite counseling otherwise (Tr. 34-36, 367, 371-72, 375-76, 379-82, 401-02, 422, 427, 438-40). The ALJ did not err in considering Plaintiff's noncompliance because "[a] failure to follow a recommended course of

8

treatment . . . weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Third, the ALJ found Plaintiff's activities of daily living were not limited to the extent one would expect in light of her subjective complaints (Tr. 30-31). Of specific note, Plaintiff stated that she is the primary caregiver for her disabled daughter (Tr. 30-32, 37, 50-51, 59, 248-51). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility").

Fourth, the ALJ indicated Plaintiff worked during the relevant period (Tr. 36). Indeed, Plaintiff reported self-employment earnings over $7,000 each year between 2012 and 2016 from her work as a babysitter (Tr. 36, 206-07). Even part-time work after the alleged onset date may be relevant to a claimant's RFC determination. *Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014) (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)).

Fifth, the ALJ raised other specific inconsistencies between the Plaintiff's testimony and the record. For example, Plaintiff indicated that she was having seizures more frequently than was supported by the record (Tr. 32, 35-36, 52-54). Also, Plaintiff reported that she had not been working since being on disability when, in fact, she was working. (Tr. 36, 52, 127, 130). An ALJ may discount Plaintiff's subjective complaints because of "inherent inconsistencies or other circumstances." *Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015). Indeed, "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (quotation marks omitted) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

In addition to her detailed evaluation of Plaintiff's subjective complaints and the medical record, the ALJ also reviewed the medical opinion evidence of record including that of Dr. Darlene Thorson, Ph.D. ("Dr. Thorson"), a state agency psychological consultant, who addressed Plaintiff's alleged mental impairments (Tr. 36-37).  In a psychiatric review technique dated July 11, 2017, Dr. Thorson determined that Plaintiff's borderline intellectual functioning was a medically determinable impairment but "not severe" (Tr. 483-84).  Dr. Thorson found Plaintiff to be mildly limited in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 495).  In so doing, Dr. Thorson reviewed a 2003 evaluation indicating intellectual potential on the borderline range (Tr. 497).  Dr. Thorson indicated that while Plaintiff's general memory index was in the low average range, the consultative examining doctor stated that Plaintiff "'rushed through some tasks, leading to scores that are thought to somewhat underestimate her intellectual potential which is judged to be in the borderline range'" (*Id.*).  Dr. Thorson also found that recent visits noted good judgment, normal mood and affect, active and alert, oriented, and recent and remote memory normal (*Id.*).  The ALJ afforded the opinion "some weight" as it was "based on a remote examination, which has not been repeated and there is no additional support in the current record to show the [Plaintiff] has a diagnosis of borderline intellectual functioning" (Tr. 36-37).  The ALJ continued, "[m]oreover, the examination from 2003 suggests the results may not be valid" (Tr. 37).  As addressed in detail above, the medical record does not include an indicia of borderline intellectual functioning or memory issues except the 2003 report as indicated by the ALJ and psychological consultant.  As noted by the ALJ, however, while the 2003 report lists borderline intellectual functioning as a diagnosed impairment, the examiner questioned the results as detailed by Dr. Thorson (Tr. 342-349).

In conclusion, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's borderline intellectual functioning and memory problems are not severe impairments. An ALJ may omit alleged impairments from her RFC finding when "[t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities." *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008).

**B. Emergency Room Records**

Second, Plaintiff asserts that the ALJ failed to obtain medical records from several emergency room visits (Doc. 16 at 8-9). Plaintiff, not represented by counsel at the time, submitted only discharge summaries from three emergency room visits in 2015 (Tr. 351-364). Plaintiff asserts that because the ALJ failed to obtain and examine the actual treatment records from these visits, the ALJ's decision is not supported by substantial evidence (Doc. 16 at 9).

The Court finds that the ALJ properly considered the discharge summaries and need not have requested the medical records from these visits. As a preliminary matter, it is Plaintiff's burden whether represented by counsel or not, to provide evidence as to the existence and severity of her impairments. *Kamann*, 721 F.3d at 950. Plaintiff visited the emergency room at DePaul Hospital on three occasions in 2015. The first, on April 10, 2015, was for a seizure (Tr. 34, 351-54). The discharge summary notes sub-therapeutic levels of her serum Dilantin and indicated that Plaintiff was instructed to follow-up with a neurologist (Tr. 34, 351). Second, Plaintiff visited the emergency room on October 7, 2015, and was diagnosed with "convulsions, unspecified type" (Tr. 34, 355-59). Plaintiff was prescribed Keppra and Dilantin, her normal seizure medication routine, and was provided instructions to follow up with her primary care physician (Tr. 34, 355). Finally, on November 25, 2015, Plaintiff visited the emergency room for complaints of lumbar and sacroiliac joint pain (Tr. 34, 360-64). Plaintiff was not provided

any apparent treatment but instead directed to follow up with her primary care physician (Tr. 34, 360).  Plaintiff was not admitted to the hospital on any of the three occasions.  The ALJ considered the discharge summaries and, on one occasion, indicated that Plaintiff provided "her discharge summary rather than the actual treatment notes" (Tr. 34).  "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment."  *McCoy*, 648 F.3d at 612.  Indeed, the three visits here were fairly unremarkable.  Only two of the three visits related to Plaintiff's seizure disorder, neither of which required inpatient care.  Furthermore, the discharge summaries from these two visits included indicia of noncompliance.  Thus, the ALJ did not err in failing to obtain the medical records underlying these discharge summaries.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of May, 2020.

    /s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE